## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOSEPH DICKINSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 13-1031-GMS |
| | ) |
| DAVID PIERCE, Warden, and | ) |
| ATTORNEY GENERAL OF | ) |
| THE STATE OF DELAWARE, | ) |
| | ) |
| Respondents. | ) |

Joseph Dickinson. *Pro se* petitioner.

Maria Knoll, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.

## MEMORANDUM OPINION

_____, 2016
Wilmington, Delaware

Sleet, District Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Joseph Dickinson ("Dickinson"). (D.I. 1) For the reasons discussed, the court will deny the petition.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In February 2009, Dickinson was indicted on charges of attempted first degree robbery, second degree burglary, possession of a firearm during the commission of a felony ("PFDCF"), possession of a destructive weapon, and second degree conspiracy. (D.I. 15, Appellant's Op. Br. in *Dickinson v. State*, No. 484, 2012, at 1) The State prosecuted Dickinson as an accomplice to robbery pursuant to Del. Code Ann. tit. 11, § 271. Before trial, the State offered Dickinson a plea agreement requiring him to plead guilty to attempted second degree robbery (a lesser included offense of attempted first degree robbery), PFDCF, and possession of a destructive weapon. *See State v. Dickinson*, 2012 WL 3573943, at *1 (Del. Super. Ct. Aug. 17, 2012). The plea agreement also required Dickinson to acknowledge that he was eligible to be sentenced as a habitual offender under Del. Code Ann. tit. 11, § 4214(b), which requires the imposition of a mandatory life sentence. *Id.* However, in exchange for Dickinson's guilty plea, the State agreed to move to declare Dickinson a habitual offender under Del. Code Ann. tit. 11, § 4214(a) to avoid a mandatory life sentence, and to recommend no more than a total of ten years incarceration on all charges. *See Dickinson*, 2012 WL 3573943, at *1. Dickinson rejected the plea offer on two occasions, once during his final case review and once during an extensive colloquy on the morning of his trial whereby he personally informed the Superior Court that he wished to proceed to trial. *Id.*

A Delaware Superior Court jury convicted Dickinson all charges in September 2009. *See Dickinson*, 2012 WL 3573943, at *2. The Superior Court sentenced Dickinson as a habitual offender to life in prison for his attempted first degree robbery conviction, and to eight years at Level V, suspended after six years for two years of probation, for his remaining convictions. *See State v. Dickinson*, 2016 WL 613906, at *1 (Del. Super. Ct. Feb. 15, 2016). The Delaware Supreme Court affirmed Dickinson's convictions on direct appeal. *See Dickinson v. State*, 8 A.3d 1166 (Del. 2010).

In December 2011, Dickinson filed his first motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). *See Dickinson*, 2012 3573943, at *1. The Superior Court denied the motion, and the Delaware Supreme Court affirmed that decision. *See id.*; *Dickinson v. State*, 2013 WL 1296263 (Del. Mar. 28, 2013).

In September 2014, Dickinson filed a motion for correction of illegal sentence pursuant to Delaware Superior Court Criminal Rule 35(a) ("Rule 35(a) motion"). *See Dickinson v. State*, 2015 WL 783376, at *1 (Del. Feb. 23, 2015). The Superior Court denied the Rule 35(a) motion, and the Delaware Supreme Court affirmed that decision. *Id.*

In November 2015, Dickinson filed a second Rule 61 motion, which the Superior Court summarily dismissed as procedurally barred. *See Dickinson*, 2016 WL 613906, at *1. The Delaware Supreme Court affirmed that decision. *See Dickinson v. State*, 138 A.3d 475 (Table), 2016 WL 2585887 (Del. 2015).

## II.    GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).

Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only

"on the ground that he is in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards

for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to

ensure that state-court convictions are given effect to the extent possible under law." *Bell v.

Cone*, 535 U.S. 685, 693 (2002).

## B. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the

federal court must review the claim under the deferential standard contained in 28 U.S.C.

§ 2254(d).[1] Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the

state court's decision was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States," or the state

court's decision was an unreasonable determination of the facts based on the evidence adduced

in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000);

*Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies

even "when a state court's order is unaccompanied by an opinion explaining the reasons relief

has been denied." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). As explained by the

Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in

the absence of any indication or state-law procedural principles to the contrary." *Id.*

---

[1]A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the
state court decision finally resolves the claim on the basis of its substance, rather than on a
procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

4

Finally, when reviewing a claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). The Supreme Court has "not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Burt v. Titlow*, 134 S.Ct. 10, 15 (2013); *but see Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.    DISCUSSION

Dickinson's timely filed petition asserts two grounds for relief: (1) defense counsel provided ineffective assistance by failing to request a jury instruction on accomplice level liability/lesser included offenses; and (2) defense counsel's failure to request an accomplice level liability jury instruction violated Dickinson's due process rights. Dickinson presented these arguments in his Rule 61 motion, and the Superior Court denied them as meritless. *See Dickinson*, 2012 WL 3573943, at \*5-8. The Delaware Supreme Court affirmed that decision "on the basis of and for the reasons assigned by the Superior Court." *Dickinson*, 2013 WL 1296263, at \*1. Therefore, Dickinson will only be entitled to relief if the Superior Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

### A.  Claim One:  Ineffective Assistance of Counsel

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first

5

*Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

In claim one, Dickinson contends that defense counsel provided ineffective assistance by failing to request an accomplice level liability/lesser included offenses jury instruction under *Allen v. State*, 970 A.2d 203 (Del. 2009) explaining that a jury may find an accomplice guilty of a less serious offense. When denying this argument, the Superior Court correctly identified *Strickland* as governing the contention. *See Dickinson*, 2012 WL 3573943, at *5. As such, the Superior Court's decision was not contrary to clearly established federal law.

The court must also determine if the Superior Court reasonably applied *Strickland* to the facts of Dickinson's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the court must review the Superior Court's denial of Dickinson's ineffective assistance of counsel allegations through a "doubly deferential" lens. *Id.* "[T]he question is not whether

6

counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Dickinson was charged with, and convicted of, attempted first degree robbery and second degree burglary as an accomplice. *See Dickinson*, 8 A.3d at 1168. When the Delaware Supreme Court rejected Dickinson's appellate argument that the trial court committed plain error by failing to give the jury an accomplice level liability/lesser included offenses instruction *sua sponte*, it noted that "there was a factual basis in the record to support a finding that Dickinson was guilty of attempted second degree robbery and third degree burglary." *Id.*

Thereafter, in his Rule 61 motion, Dickinson argued that defense counsel provided ineffective assistance for being unaware of *Allen* and for not requesting a jury instruction on accomplice level liability/lesser included offenses. Defense counsel responded to this argument by explaining that he did not discuss the possibility of requesting an accomplice level of liability/lesser included offenses instruction with Dickinson because he was unaware of the holding in *Allen.* (D.I. 15, App. to State's Ans. Br. in *Dickinson v. State*, No. 484, 2012, at B-3) However, defense counsel also stated that, even if he had been aware of *Allen*, he would have advised Dickinson that arguing alternative inconsistent defense theories to a jury dilutes the strength of a single defense theory and runs a significant risk of any defense theory losing credibility in the eyes of the jury. *Id.* Defense counsel noted the risk caused by urging the jury to find Dickinson "not guilty" if warranted by the evidence but, on the other hand, telling the jury that if they found Dickinson guilty of committing a crime, the crime was not as serious as the crime originally charged in the indictment. *Id.* Defense counsel also expressed his belief that Dickinson would have opted against proceeding with alternative defenses at trial, because a guilty verdict on the lesser included offenses of attempted second degree robbery and third

degree burglary would have qualified Dickinson as a habitual offender under § 4214(a) and would have resulted in a sentence similar to, if not greater than, the sentence recommended in the State's plea offer. *Id.* at B-4.

Given his assessment of Dickinson's situation and Dickinson's rejection of the State's plea offer, defense counsel took an "all or nothing" approach during Dickinson's trial, arguing that Dickinson never left his car and that he had only been giving his co-defendants a ride to buy drugs. *See Dickinson*, 8 A.3d at 1168. Defense counsel tried "to convince the jury that [Dickinson] was an innocent bystander, and not guilty of any level of offense." *Id.*

When denying the instant ineffective assistance of counsel argument contained in claim one, the Superior Court provided the following explanation as to why defense counsel's unawareness of the *Allen* decision was irrelevant to determining defense counsel's effectiveness:

> As to the first prong, trial counsel's performance was objectively reasonable, irrespective of whether strategic decisions resulted from counsel's lack of awareness of a recent court decision or deliberate trial strategy. That trial counsel was unaware of the *Allen* holding is of little import because [Dickinson] has misapplied *Allen*'s holding. *Allen* simply requires that when a defendant is entitled to an accomplice liability instruction, and requests it, the court is required to provide the instruction. [] The issue of a level of liability instruction was not newly minted in *Allen*, but in fact has long been in effect. There is no evidence that trial counsel was unaware that a potential accomplice level of liability instruction existed, only that trial counsel was unaware of the particular holding in the very recently decided *Allen* case, which bears no effect on [Dickinson's] present claims since no instruction was requested.
>
> Importantly, the 11 Del. C. § 274 accomplice level of liability instruction recognized in *Allen* acts like a lesser-included offense instruction – it gives the jury a middle ground on which to find the defendant guilty. An accomplice level of liability instruction is not required unless requested for the same reasons as a lesser included offense instruction. Lesser included offenses and accomplice level of liability instructions can be inconsistent with an "all or nothing" defense. An "all or nothing" defense maintains the defendant's complete innocence by electing not to provide the jury with middle ground upon which to find the defendant guilty.

*Dickinson*, 2012 WL 3573943, at *6.

8

Using this legal framework as a starting point, the Superior Court opined that defense counsel's failure to request an accomplice level of liability/lesser included offenses instruction did not satisfy the deficient performance prong of the *Strickland* standard for several reasons. First, by refusing to accept the State's offered pleas, Dickinson "impliedly adopted counsel's 'all or nothing' trial strategy." *Id.* at *7. Since Dickinson "personally and explicitly rejected a plea offering the same lesser included offense that a level of liability instruction would have provided," the Superior Court determined that he did not "rebut the presumption that not requesting an accomplice level of liability instruction was reasonably professional trial conduct." *Id.* Second, defense counsel "structured trial arguments consistent with [Dickinson's] desire to employ an 'all or nothing' defense." *Id.* For instance, during his opening and closing statements, defense counsel emphasized that the codefendants were not credible witnesses, that Dickinson did not leave his car, and that Dickinson believed his friends were merely planning to buy drugs. *Id.* Third, defense counsel successfully requested a *Bland*[2] jury instruction, "effectively cautioning jurors that accomplice testimony must be viewed with suspicion and great caution." *Dickinson*, 2012 WL 3573943, at *7.

After reviewing claim one in context with the record, the court concludes that the Superior Court's decision constituted a reasonable application of *Strickland*. Given his criminal history, Dickinson was eligible for habitual offender status under both § 4214 (a) and (b). (D.I. 15, State's Ans. to Rule 61 Motion, *State v. Delaware*, ID No. 0901009990A, at 7-8) Pursuant to § 4214(a), Dickinson's possible sentence ranged from a minimum mandatory thirty year sentence to a possible life sentence. Pursuant to § 4214(b), Dickinson was subject to a mandatory life sentence. Given these circumstances, even if an accomplice liability jury

---

[2]*Bland v. State*, 263 A.3d 286 (Del. 1970).

instruction had been given and he was convicted of any of the lesser included offenses for attempted first degree robbery, the lowest possible sentence Dickinson could have received was the minimum mandatory thirty year sentence under § 4214(a), and the maximum possible sentence was life under § 4214(a) or (b). (D.I. 15, State's Ans. to Rule 61 Motion, *State v. Delaware*, ID No. 0901009990A, at 7-8) Since Dickinson twice rejected the recommended ten year sentence in the State's plea offer, the court cannot view defense counsel's strategic trial decision to go "all or nothing" as reckless or ineffective. For all of these reasons, the court concurs with the Superior Court's determination that Dickinson failed to satisfy the performance prong of *Strickland*, because the mere availability of an alternative trial strategy did not render defense counsel's performance objectively unreasonable. *Id.* at *8.

The Superior Court also held that Dickinson's argument failed to satisfy *Strickland*'s prejudice prong, because there "is no evidence suggesting a reasonable probability that, if the jury received an accomplice level of liability instruction, it would have returned a verdict for lesser included offenses. Mere speculation that the verdict may have differed is insufficient to undermine confidence in the trial outcome." *Id.* at *8. The Superior Court noted that the jury still convicted Dickinson of attempted first degree robbery even though it had been presented with all of the evidence and was given the cautionary *Bland* instruction regarding accomplice testimony. *Id.*

In this proceeding, Dickinson does not provide anything to support his speculative assertion that he would have received a different verdict if defense counsel had requested and obtained an accomplice level liability/lesser included offenses jury instruction. Therefore, the court cannot conclude that the Superior Court unreasonably applied Strickland in determining that Dickinson failed to establish prejudice under *Strickland*.

In sum, after viewing the Superior Court's denial of the instant argument, and the Delaware Supreme Court's affirmance of that denial, through the doubly deferential lens applicable on federal habeas review, the court cannot conclude that defense counsel's failure to request an accomplice level liability/lesser included offenses jury instruction amounted to constitutionally ineffective assistance.  Accordingly, the court will deny claim one for failing to satisfy § 2254(d).

### B. Claim Two:  Ineffective Assistance Resulted in Violation of Due Process Rights

Next, Dickinson contends that defense counsel's failure to request the accomplice level of liability/lesser included offenses jury instruction violated his due process right to a fair trial. In essence, this argument is an attempt to establish prejudice under *Strickland.*  The Superior Court denied the argument, explaining that

> [a] level of liability instruction, or a lesser included offense instruction, is merely an option for a defendant to request if consistent with trial strategy.  [Dickinson's] claim that his due process rights were violated is ultimately unpersuasive because the trial strategy was reasonable. [] Simply because an alternative trial strategy was available does not mean that trial counsel's performance was unreasonable or that [Dickinson] did not receive a fair trial.

*Dickinson*, 2012 WL 3573943, at *8.

The failure to give a jury instruction may violate due process where the error "so infected the entire trial that the resulting conviction violate[d] due process."  *See Henderson v. Kibbe*, 431 U.S 145, 155 (1997)(explaining that "an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.").  Nothing in the state court record or Dickinson's filings in this proceeding indicates that the absence of jury instruction on accomplice level of liability/lesser included offenses so infected the trial with unfairness as to violate Dickinson's due process rights.  Rather, since the jury found Dickinson guilty of all the charged offenses after

11

seeing all of the evidence and hearing a *Bland* instruction, the court finds the possibility that the jury's verdict might have been different if it had been provided with the accomplice level liability/lesser included offenses instruction to be "too speculative to justify the conclusion that constitutional error was committed." *Henderson*, 431 U.S. at 157. In addition, since defense counsel's actions with respect to the accomplice level of liability/lesser included offenses instruction did not amount to constitutionally ineffective assistance, Dickinson cannot demonstrate that counsel's failure to request such an instruction deprived him of a fair trial. For these reasons, the court concludes that the Superior Court and the Delaware Supreme Court reasonably applied *Strickland* in denying claim two. Accordingly, claim two does not warrant relief under § 2254(d).

## IV.    CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court has concluded that Dickinson's petition fails to warrant federal habeas relief. The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

12

## V.    CONCLUSION

For the reasons stated, Dickinson's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.